Case 1-2-2363 Randle Griffin v. Mary Berghuis, NFL Oral Argument 15-25 Ms. Harris, Indian Health Morning Thank you, and may it please the Court. My name is Sarah Harris, and I represent Appellant Randle Griffin. The First Amendment protects prisoner speech unless it is inconsistent with legitimate penological objectives, and the District Court erred in granting summary judgment on Griffin's first claim because the Warden and Assistant Deputy Sotherby transferred Griffin to another prison and barred him from the Warden's Forum just for speaking. The speech in question in this case, Griffin's letter, could not be more innocuous. The letter stated Griffin's intent to abide by the rules of the prison. It stated Griffin's fear that prison officials would retaliate against him and other members of the Forum if they simply raised concerns about the lack of air conditioning in the prison and the quality of the prison's food. This letter falls in the heartland of the speech that the First Amendment protects, and Griffin's fears in this case prove well-founded. There's a difference in prisons because of the nature of the problem, and what is the standard for prisons? It's not nearly as much free speech in prisons as in advertising or in society generally, so what standard should we apply? It's obviously speech here, the letter, but what standard should we apply to that situation? You should apply the standard that the Supreme Court has articulated in cases since Pell in the 1970s, which is that the speech is protected unless the prison has indicated some legitimate penological objective that justifies suppressing the speech. In Pell and all the other cases, you have a prisoner who's doing things like writing letters or a prisoner wants to send mail to announce an official or inmate-to-inmate communications, and the Supreme Court in that case... Unless there is a legitimate penological reason to limit speech, that's your standard? Yes, that's the Supreme Court standard, and what the prison would need to articulate to meet that standard is also very clear from what the Supreme Court has said, and there has to be some sort of causal connection between the restriction in question and the legitimate objective. They have to establish that for all internal prison communications? You mean that the prison would have to articulate a reason for... Yes, I think that's very... Think about the Shaw case, for instance. The facts of Shaw are that that is a case involving inmate-to-inmate communication. That's the 2001 Supreme Court case. The first inmate is the legal representative of the second inmate, writes that inmate in the prison a letter that says, here's what I think should happen with your case, and the prison says, we want to suppress inmate-to-inmate correspondence because we have... The prison says, we want to suppress this. We think that the letter is insolent and violates prison rules, and the Supreme Court says, look, this case is going to be analyzed under the framework they've set out since... Are we going to litigate all prison rules that involve some sort of speech within the prison to find out if they actually have an interest in furthering the policy of the prison? I mean, are we going to litigate to death everything in prison? I think I would say two things. First of all, this is actually a letter to an outside person. No, it's a letter to the regional administrator, isn't it? Who is outside the prison. Well, he's still within the prison system. Within the prison system is very different, though, from an inmate-to-inmate communication within the prison, and I think the Supreme Court in cases like Martinez... Well, he's still within the prison system. That's all. If this were a letter to a true outside person, it would be different, but you're still within the Michigan prison system here. Respectfully, I disagree because the Supreme Court suggested that letters that are circulated within a prison by inmates would potentially pose a bigger security risk, naturally, because you see prisoners who might be writing to each other in code or about other things. This is simply a letter neutrally conveying grievances about the conditions of confinement, and I think under those circumstances it is quite clear the state would need to articulate something, and I think this circuit's own precedent should... What if this was actually within the same prison? Say that he had a grievance against the assistant warden and then communicated to the warden. Would that be protected by First Amendment under your theory? Absolutely, and not just under my theory. I think under several of your precedents. So first of all, take the Sigurdsdal case. The facts of that case are you have an inmate who says, I would like to get more money from my account to pay a lawyer. One of the prison officials says, No, I'm not going to give you that money. And the prisoner then says, I'm going to go over your head and complain to someone else in the prison. We're going to have a lot of prisoner lawsuits, I think, if your theory works. I mean, I would say also that the Wolfa case is very similar to this one. You have a prisoner in that case who gets other prisoners to sign his petition. The prison says, This violates a rule against insolence, and the standard is simply the prison needs to just articulate some sort of causal connection, and I think also that any concerns that you have about a lot of prison litigation are really obviated by the fact that the Prison Litigation Reform Act already screens out a lot of what you might consider frivolous grievances. And I think there's also a bigger picture concern at stake here, which is this court has held, time and again, that there is no justification for restricting someone's constitutional rights. And I think that the- But they're in prison. I mean, their rights are taken away because they've been convicted and they've been incarcerated. I think, look, there's language specifically in Turner that says, Prisoners give up many things when they go to prison, but the First Amendment is not one of them. The standard has been very clear. I mean, there might be some First Amendment protections that survive, but most of them don't, right? I think that would depend on whether the state has articulated a causal connection. It doesn't have to do much. Look, we're talking about a situation in which if the prison says, Yeah, you violated the rule on insolence, and points to something in the letter that would support that, we'd be there. But, again, we're talking about a case in which the prison has done nothing more than say in a letter, We think that you have raised a grievance. You're being kicked out of the Warden's Forum because this purportedly demeans the staff and the letter itself as some sort of attempt to organize a protest. Let's move on. Does he have a constitutional right to be in the Warden's Forum? No, but that's not actually an element that he would need in order to show retaliation. Again, even if you don't have a constitutional right to the thing that you're being deprived of, you do have a constitutional right to speech. And that's clear from cases like Newsom v. Norris. What's the best case that shows this would deter a reasonable prisoner if you kick them out of the Warden's Forum? What's your best case on that? Sure, Newsom v. Norris. Is that a Warden's Forum case? It's a case about inmate advisors. It's even better, I think, than the Warden's Forum example. The best case in a clearly established setting, prong two, is a case involving the Warden's Forum. It can't get better than that. That might be the best, but all I have to show is that there's a clear rule, or even an on-point case. This Court has never said that I have to have an 100% on-all-fours case, and the Supreme Court said that too. Remind me of this fact pattern of this case again. Newsom v. Norris. I said the fact pattern. Yes, sorry, the fact pattern of the case. The fact pattern of that case is that it involves an inmate who is raising grievances, and he's serving as an inmate legal advisor. The Warden has, in fact, appointed him to a discretionary appointment as the inmate legal advisor. And he is removed from that position because he raises grievances. He brings a First Amendment retaliation claim, and this Court says, yes, that's a First Amendment retaliation claim. So he was practicing prison law? Yes, practicing prison law. He doesn't practice prison law anymore. Why is that like a Warden's Forum? I guess I'm struggling with that. Because the Warden's Forum is similar in the sense that it's an appointed position. You're not representing people, are you? You're raising grievances that are for the prison-wide population. So I think if you look at PD 41150, that sort of spells out what the Warden's Forum representative's responsibilities are. And they do include raising legitimate grievances that are prison-wide for the population. So I would say it is very similar, in many ways, to an inmate legal advisor. How about the fact on that same claim you've got to show it's adverse, it's an adverse action, and while most of our cases say switching someone to a new prison of the same security level, not always, but normally, is not going to be sufficient negative action to the inmate. Sure, I think the answer is... Is that generally true? I think that this Court's precedent in unpublished decisions, and this is a point that Hill v. Lapin makes, unpublished decisions of this Court have frequently said that a transfer alone may not be adverse action. But it is equally the case, it has been very clear since Digger's Owl, that a transfer accompanied by foreseeable consequences, and Hill v. Lapin recognizes that being removed further away from your family is one such consequence. Where are Mr. Griffin's family, where are they from? The record doesn't reflect where they're from. What it does reflect... Where is he from? Mr. Griffin, I'm not sure where Mr. Griffin is from, but his conviction pertained to events arising in Detroit. In Detroit, Eastern District of Michigan. Now, he's been transferred to Adrian, which is much closer to the Eastern District of Michigan than Skeegan, right? I don't think you can infer from where Griffin was convicted, however, where his family actually is. Well, if the record's silent, I guess that would seem we can't do anything. Yeah, it means you haven't really sustained your burden of showing that this is adverse to his family if you don't even know where his family's from. Mr. Griffin said that his family was unable to visit him since he was transferred. Why would that be? You know, Adrian... Okay, he's convicted in the Eastern District. Adrian's much closer to the Eastern District. I mean, I would think it would make it easier for his family to... Well, I think it's also important. The state does not contest that he's been moved further from his family. What we have is Mr. Griffin saying that he was moved further from his family. They haven't been able to visit him since then. And he also said... I mean, why not? It's only 183 miles from Skeegan to Adrian. It's not that far. I think it would be very far... It's in the southern part of the state. It'd be different if he's moved up to the upper peninsula of Michigan. But he really isn't moved that far away. I think it would certainly be very far for someone who doesn't own a car, for instance. That's quite a long distance. And I would also add... About 10 miles is pretty far. There's always buses, but, you know... The bottom line is we don't know where his family... You don't. But you also know that Mr. Griffin suffered the additional foreseeable consequence of being deprived of his prison job in the first prison, which was higher paying and which he relied on to do various things, such as try to pay various legal expenses he had. So I think even if you wanted to discredit... Where is that in the record? Mr. Griffin raises... There are two prison jobs and what they were and what the requirements were and the benefits of each were. Mr. Griffin mentions both in his complaint and in his objections that he had a higher paying job at the first prison and that at the second one he was unable to obtain one for six months and that when he did obtain it, he was only able to... It was only for three or four days. Is this a motion to dismiss case I'm trying to make? It's a combined motion to dismiss and motion for summary judgment. Well, that combination is really important because at summary judgment you're not allowed to rely on what's in your complaint. You have to put in record evidence. Sure, but I think that this is the type of fact in a complaint where I think Mr. Griffin should be fine. Maybe I'm wrong. I just thought that's not how it worked. I thought once you got to summary judgment, what you say in the complaint matters not. What matters is whether you can support the allegations in the complaint with evidence, and if you don't, that's a problem. That's certainly true of the summary judgment standard. I mean, again, the other fallback in this situation, though, is that we have a transfer combined with removal from the warden's forum. So even if you are inclined to dismiss the idea that there were foreseeable consequences associated with Griffin's transfer, I think the combination of these two adverse actions would suffice. And I would also mention that I think fundamentally... The testimony point of it, right? There was also this testimony in the investigation? That's the second claim, yes. Yeah, so just real quickly, what exactly is going on? I mean, you have these two inmates supplying very good evidence, but isn't their evidence go to the forum as opposed to the testimony? I don't remember their saying that the retaliation related to the testimony. Are you understanding the question? Yes, I understand the question. The question is about the causation element. And I think that there are several things that support causation with respect to the investigation, in addition to the affidavits. Am I right in thinking the affidavits are about the forum as opposed to the... You're correct as to the first one. There's two affidavits. It's Anthony and Davis. And I can't remember which one, but one of them simply says that what the prisoner overheard was general complaints about the officers not liking Griffin trying to change the way the officers ran the unit. But that's not about his testifying in an investigation. I think the idea that you're trying to change the way someone runs the unit would encompass the idea that you're participating in an investigation of one of the officers allegedly assaulting a prisoner in the unit. Are there any other questions on this phase? Okay, you'll get your rebuttal. We'll hear from the State. Thank you. Well, we still have the other defendants. Do you want to... I would rather get a little bit of argument here so they can respond as opposed to having her make her arguments as to the other defendants and rebuttal without giving the State of Michigan a chance to respond. So just briefly talk about the other defendants. Sure. I think the second claim pertains to three defendants, McMurtry, Condon, and Downard. And the remarkable thing is how much the State and Griffin now apparently agree on the basis for the claim. The protected conduct in that claim is both that Griffin participated in the warden's forum and also that he participated in an investigation. The State now agrees that the investigation component, at least, is, quote, arguably protected. The adverse action in question is a false misconduct ticket that McMurtry filed one day after the conversation that we just talked about, that the prisoners overheard with respect to Griffin happened. And that is clearly established as adverse action. I think Brown v. Crowley, for instance, definitely establishes that. The only debate here we have is about causation. And to the extent that there's any debate about this, summary judgment would be improper under this Court's decision in, for instance, Cockrell. Well, okay. You said that the alleged false misconduct ticket was filed by McMurtry? Yes, that's correct. How do you bring in the other two defendants, then? I think the fact that two prisoners in uncontested testimony overheard those three officers the day before the ticket saying that they were going to get together and file false misconduct tickets against Griffin certainly brings them in. This Court's precedents, for instance, King Chu, say that if you are someone who participates in acts that set the adverse action in motion, you're also entitled to summary judgment. Under conspiracy theory, you get the other two. It's not expressly called a conspiracy theory, but I think under King Chu, you would have enough to show that they are. You're saying that that's enough for a factual fine to at least get past motion to dismiss, motion for summary judgment, whether or not it's true or not that you ought to get past this stage, right? That's absolutely correct. Again, the State is not entitled to summary judgment on this record. And refresh me. What did the magistrate below, the magistrate that did the opinion that was adopted by the district judge, how did they deal with that? The magistrate simply thought that there wasn't enough of a causal connection on this claim for Griffin to survive. That he would have been issued the misconduct ticket irrespective of his cooperation with the Ombudsman. Is that it? I think the magistrate actually was focused... Yes, exactly. The point being that all the inmates did is connect the discipline to the warden's forum participation. They didn't connect it to testimony in the investigation. Yes, so the causation component was with respect to did both forms of protected conduct inform the allegedly retaliatory act. Notably though, the district judge did not adopt that part of the recommendation. The district judge just said, look, regardless of whatever I think of protected conduct, there's no adverse action in this case. That, I think, would be clearly wrong for the second claim, again, under Brown v. Crowley. Thank you. We'll hear from the State. May it please the Court, Kevin Heimbaugh on behalf of the Department of Correctional Defendants. Before I start, I just want to emphasize DACA Entry 9, this was only a motion for summary judgment because that really guides the whole case as far as the standard. It was only a summary judgment motion. Your Honors, as stated in the standard of review section of our brief, this Court may affirm for any reason supported by the record, even though it's de novo review. You talked about the claim she talked about last, the investigation, testimony in the investigation, and the fact that they do  I overheard them saying we're going to get this guy, essentially. And how do you deal with that? Because there's absolutely no evidence other than speculation that they were talking about or overheard about the Ombudsman's investigation. If you look at those affidavits, it's on docket 14, page ID 146 and 147. There's two affidavits. The only inference you really could get is that those two inmates are talking about the warrants form, about, for whatever reason, the defendants were upset about what the plaintiff was doing at the warrants form, and they wanted to do something to him. There's nothing whatsoever in those affidavits that these two inmates overheard anything about an Ombudsman's investigation, any facts underlying that investigation. There's just simply not one iota of evidence in support of the plaintiff's claim. And I'm sorry, I'm using plaintiff just to get rid of his name. So there's no evidence connecting the Ombudsman's investigation to the adverse action in that second claim. Well, if the investigation is ongoing, and then they're overheard that they want to get Mr. Griffin, I mean, isn't it reasonable to infer that it may have something to do with the investigation? I mean, they don't have to specifically spell it out, do they? No, because really, if you reread those two affidavits from the prisoners, they're really talking about the warrants form. There's no evidence that those two prisoners even knew that there was an Ombudsman's investigation. I mean, it really would be a leap of speculation. The prisoners are overhearing the conversation, right? The guards overhearing the... No, yeah, no, right. So the prisoners overhearing the guards, right? I've... But clearly what the affidavits of the prisoners are implying is that what they heard was about... What they heard was about the warrants form, about them, the officers overhearing the officers trying to get this guy kicked out of the warrants form. There's nothing at all in those affidavits saying that the prisoners overheard any communications from the officers that they wanted to somehow get them for this investigation. There's just no evidence of that. Okay, so it's really not conclusive that they want to get them because of the investigation, but is there enough to raise an issue of fact for more discovery? I mean, you know, right now, well, it is summary judgment though, isn't it? Right. Was there discovery or... I believe there... He was pro... He was pro per. This is the bulk of our cases where they're resolved early. I don't see that there was a motion that Plaintiff needed discovered to answer this question, which is certainly the Rule 56. Counsel? Yes. We're here to come into the case and has perhaps focused it much more than it was in the district court where there was no lawyer involved. On the question of... The first question here, what is the penological reason for dispatching him to another prison? The letter that he wrote looks pretty innocuous. I mean, it apparently upset the warden or the... I guess the warden of the prison, but it doesn't on its face look like it's a very... something that should be so upsetting. Well, and of course, that question presumes that the letter was the sole piece of evidence that made the Warren Act. If you look at her affidavit, Warren Burgess, her affidavit connected to the summary judgment motion, she also talks about at the meeting there was her perception that the plaintiff was trying to create some unrest. And so, I think there's been a false presumption that the Warren acted solely and only on that letter. And the evidence supplied in the summary judgment motion is that there may have been more to that story as far as what was going on. What was it? There may have been... What does that include? That was in fact... Well, you know, I think the difficulty in the prison context, you're not going to always get the smoking gun of the prisoner standing up saying, I hereby declare I'm going to start a riot today. You know, it's... That kind of goes against you. The correction officers may not specifically say in a smoking gun we're going to get them for doing this. You're exactly correct. What they say is reasonable to infer that maybe they are out to get him for talking to the ombudsman about the assault by one of the prisoners. But there has to be at least... My question is, what is it exactly that upset her so much so that he would be transferred and punished for what it... Not only, as you say, for the letter, but what precisely upset her? I'm willing to give credence to whatever she says about that. And her perception was that he was trying to create unrest and my honest answer to your question is that the warden, I don't think, articulated it as precisely as perhaps a lawyer or a judge could, but these are very quick decisions in the... Can you distinguish that from she was just having a bad day that day? You know, she could have. You know, and she interpreted how he was acting in the meeting as wanting to create unrest. A lot of these... We spend so much time looking at a statement that maybe took two minutes of the warden's day and then she moved on to the next... You've answered my question. Bottom line is she was upset, but we don't know exactly why she was upset. Exactly. And on some of her judgment it was up to the plaintiff to prove the three elements of that claim. So going... Let's just go through that first claim. Also I just want to clarify this whole issue of the qualified immunity. I know I don't want to throw too much of a wrench into the works, but the district court judges are busy. He didn't rule on every single grounds that could have disposed of the case. We raised qualified immunity. The district court judge did not rule on qualified immunity because he could rule on the merits. That doesn't go to say that that doesn't provide an alternate basis for affirming if this court is leaning towards finding that the plaintiff met his burden on the cause of action. Does that go to both sets of claims? The set against the wardens and the set against the correction officers? It does because two issues, both the warden's forum and the issue of transfer, both of those have some gray areas. How about regarding to the correction officers for allegedly filing false misconduct charges because the plaintiff was talking to the ombudsman in regard to an investigation as to an assault that occurred. That is the argument on qualified immunity. It's not clearly established. If that were the facts and if they could actually prove that, is your position it's not clearly established that that would be a violation of his constitutional rights? That particular one, I think qualified immunity is least applicable to. I think the qualified immunity really goes to the issues with the warden's forum and the transfers, whether that's advertising. That doesn't get you all the way there. No, so really the only claim that you might not have the warden's forum and transfer issue is with the ticket against the talking to the ombudsman. That's just a straightforward summer judgment analysis of whether the plaintiff submitted enough evidence to prove all three elements of their termination. Since he is pro se, should we give him a little bit of benefit of the doubt here that he's not represented by counsel? We do have some authority to that effect. Haynes versus Kerner, the seminal Supreme Court case said you have to sort of give him a break on the pleadings as far as whether he pled a claim. But as far as I know of no case law that says you should give him a break as far as how much, like a lawyer supported case should give more evidence than a pro se case. I know of no decision that says you should give him a break for that. So he's under the same rules on summary judgment. We established our initial burden. He was to come back with evidence in support of all three elements of his retaliation claim and going to the McMurtry ticket on the second claim. Our argument is number one that really is only proof of the causation is that at most it was towards the wanting to get him kicked out of the Warren's Forum. There's just simply no evidence in the record at all that any action that Officer McMurtry did was to try to punish him or persuade the plaintiff to not continue. You're saying that the evidence is not subject to an inference here that this transferring him to another prison and so on was not punishment? Yeah, the general rule is that you're saying that there is no inference that it is punishment, right? Correct. Is that what you're saying? Correct. Three days later how do you come to that conclusion that there was no relationship here in the transfer? It looks like direct causation You're not making a causation point on this score, I take it. No, there's a couple things going on. Number one even if we conclude that the transfer was caused or related to something, that something is a complaint regarding the Warren's Forum, which is not protected conduct. The audience question was going to whether it was an adverse action to transfer to another prison. Is that your question? I'm sorry, I think I misunderstood the question because you said causation. As far as the adverse action aspect, the inference from Sigurds v. Barlow is that in general we start with the transfer is not an adverse action and then you look beyond that initial inference and see if there's other issues that may elevate this from just a transfer. That is perhaps usually the case where prisoners are transferred around for all kinds of reasons, but the reasons are given to make sure that there is no inference and here there is no reason other than that I can see there is no reason other than she's mad about what happened at the Forum and three days later she transfers him. Let's look like it's completely clear. But then that goes to the qualified immunity issues of is it clearly unlawful for a prison administrator to transfer someone because of their participation in the Warrens Forum and that's one of the issues here today and that there is no clearly established... You agree with the standard about penological... Right. Right. I think that is the standard. Right. And so just to wrap up the adverse action prong of the analysis is that there's been not enough evidence in the record to establish that there were reasonable foreseeable consequences of the transfer. Unlike in the Sigurds v. Barlow case where the sole one defendant was actually, he was involved directly with the prisoner getting the funds to pay his lawyer. See he was intimately aware of the repercussions of if he were to lose his job and that was he wasn't going to be paying his lawyer. There's nothing even close to those type of facts in this case. So unless there's no further questions, I would just ask this court to affirm the district court's decision. Thank you. Thank you. Ms. Harris. Thanks. I'd like to make two points on rebuttal. The first will pertain just to what's going on with this second claim with Condon, Downer, and McMurtry and then I'd like to briefly go back to the adverse action element of the first claim. So with respect to the second claim, I think again we're on summary judgment here and we're taking all inferences in Griffin's favor and I think on that basis you see a number of pieces of evidence in the record that suggests that there is a causal connection between Griffin's participation in the investigation and the ultimate retaliatory ticket. We've gone through the prisoner affidavits and I think those at least raise some sort of inference in Griffin's favor on summary judgment. But even if you're skeptical of those, there are other things that I think are important. First of all, there's the time connection between the events. We know that Griffin was visited by an investigator from the Ombudsman's office in late February. Griffin alleges that Condon at least was certainly very well aware of this because there's a dispute as to whether Griffin and Condon had an altercation with Condon allegedly saying that the investigation would change nothing. So there's certainly facts in the record to suggest that Condon was very aware of this investigation and Condon is then conspiring with the other two officers to file false misconduct tickets against Griffin. That, on summary judgment, taking all inferences in Griffin's favor should at least create a factual dispute that would preclude the state from getting summary judgment. And for the same reasons, because this is a dispute about causation, the state would not be able to claim qualified immunity on this claim. I'd like to now turn to the second issue which is going back to the first claim with respect to Griffin's letter and the chain of events that led to his transfer to another prison and his removal from the Warden's Forum. Again, I think regardless of whether you look at the foreseeability of the consequences of the transfer or not, the transfer alone combined with his removal from the Warden's Forum expressly in retaliation for Griffin just writing a letter that the state still has yet to justify should satisfy the standard of adverse action under this court's precedence. You can look at Bell or Thaddeus X. Those cases say, in fact, most cases should be able to establish adverse action. They say it's going to be the rare case, actually, that will be screened out as so de minimis that you can excuse an officer's retaliation against a prisoner's constitutional rights. And I think again, Newsom v. Norris certainly suggests that being removed from the Warden's Forum would be very clear to an officer that that is adverse action, especially in combination with a transfer. There are no further questions. I understand you've been appointed in this case. Is that right? Yes, sir. On behalf of the panel, thank you for accepting the appointment and for doing a good job. I would like to redouble that, and it proves the difference of what a counsel's difference makes in a case. A highly competent counsel. And we appreciate you appearing too. I've traveled a long way. And on this score, it's 3-0. So good job. Thanks to both of you for your briefs and argument. We appreciate it. And the case will be submitted, and the clerk may call the next case.